IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DANIEL M. WOODS,                          :
                                          :
                    Petitioner,           :
                                          :
        v.                                :        Civil Action No. 20-1052-GBW
                                          :
ROBERT MAY, Warden, and                   :
ATTORNEY GENERAL OF THE                   :
STATE OF DELAWARE,                        :
                                          :
                    Respondents.          :

------------------------------------

Daniel M. Woods. *Pro Se* Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General of the Delaware Department of
Justice, Wilmington, Delaware.  Attorney for Respondents.

------------------------------------

**MEMORANDUM OPINION**[1]

September 18 , 2023
Wilmington, Delaware

------------------------

[1]This case was re-assigned to the undersigned's docket on September 7, 2022.

Williams, District Judge:

Presently pending before the Court is Petitioner Daniel M. Woods' Petition

for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (D.I. 1; D.I. 3) The

State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 23;

D.I. 27) For the reasons discussed, the Court will deny the Petition.

## I.   BACKGROUND

On February 14, 2017, at approximately 8:30 a.m., the Delaware State Police responded to a 911 call regarding a suspicious vehicle in the area of Blackbird Station Road in Townsend. The caller described the vehicle as a black Jeep Wrangler and provided a Delaware tag number. Corporal Raymond Shatley drove to the area and spotted the Jeep. Corporal Shatley activated his patrol vehicle's lights and siren and attempted to initiate a stop.

The driver of the Jeep—who turned out to be [Petitioner]—disregarded the police signal and fled, with Corporal Shatley in pursuit. Trooper Edwin Ramirez and Corporal William Walker joined in the chase with Trooper Ramirez' vehicle taking the lead. At one point, the Jeep came to a stop at the entrance of the Saint Anne's Golf Course, where the driver opened his door and discarded several items. Corporal Walker returned to that spot later that morning and retrieved the discarded items, which turned out to be DVDs.

The chase lasted about twenty-five minutes and ended when the Jeep overheated and came to a complete stop. At the direction of Trooper Ramirez, [Petitioner] got out of the Jeep with his hands up and got on the ground. When conducting a pat down search of [Petitioner], Trooper Ramirez removed a pocket knife from [Petitioner's] front pants pocket. Also, Trooper Ramirez saw several bracelets, other jewelry, and multiple DVDs on the floor of, and scattered inside, the Jeep.

> At approximately 1:00 p.m. on February 14, 2017, Laura Campbell returned home from work after receiving a call from her husband that their home (located at 505 Dogtown Road in Townsend) had been broken into. Laura Campbell noted that the front door of the home was damaged, and that a number of items were missing from inside the home, including her laptop, two Xbox systems, jewelry, and DVDs. Unfortunately for the Campbells, their home was burglarized again on February 16, 2017. In the second break-in, the intruder entered the home through a kitchen window and stole a scope mounting kit for a firearm and a clarinet.

> Some of the property taken in the February 14 burglary— namely, the jewelry and some of the DVDs—were returned to the Campbells on February 14, 2017. The laptop and Xbox systems were returned to the Campbells on February 23, 2017, when Corporal Walker retrieved those items from a construction worker who had called the police to report finding the items when working at the Saint Anne's Golf Course.

*Woods v. State*, 204 A.3d 1264 (Table), 2019 WL 643862, at *1 (Del. 2019).

Petitioner was charged by indictment for ten offenses related to the February 14, 2017 burglary and flight from police. (D.I. 24-1 at Entry No. 2; D.I. 24-5 at 23-26)  In January 2018, a Delaware Superior Court jury convicted Petitioner of second degree burglary, in violation of 11 Del. C. § 825; theft of more than $1500, in violation of 11 Del. C. § 841; criminal mischief, in violation of 11 Del. C. § 811; disregarding a police officer's signal, in violation of 21 Del. C. § 4103(b); resisting arrest, in violation of 11 Del. C. §1257(b); and carrying a concealed deadly

2

weapon ("CCDW"), in violation of 11 Del. C. § 1442. (*See* D.I. 24-1 at Entry No. 28; D.I. 24-5 at 23-26)  The jury acquitted Petitioner of a second count of theft. (D.I. 24-1 at Entry No. 28)

> Immediately after the verdict was read, [Petitioner] interrupted the proceedings to tell the Superior Court that he wanted to move "for an acquittal on the charges." The trial judge denied the request as follows:
>
>> [Petitioner], you have chosen up to this point to allow Mr. Buckworth to represent you. If you decide at this point to go *pro se*, the Court needs to have a hearing and address a motion to proceed pro se. It's not one that I would suggest that you make, but you're free to do so. But I'm not going to consider an oral motion at this time. It's a motion that you need to make in writing and the Court will address it at a later time.
>
> [Petitioner] did not revisit the matter of proceeding *pro se*, and he did not file a written motion for judgment of acquittal. On April 27, 2018, the Superior Court declared [Petitioner] a habitual offender and sentenced him to fourteen years of Level V incarceration for the second-degree burglary conviction and to concurrent probation for the other convictions.

*Woods*, 2019 WL 643862, at*1-2.  Petitioner appealed his convictions to the Delaware Supreme Court.  His appellate counsel filed a brief and motion to withdraw under Delaware Supreme Court Rule 26(c), stating that, after a careful examination of the record, he found no arguably appealable issues. *Id.* at *2.

Petitioner supplemented the Rule 26(c) brief with claims he wished the Delaware Supreme Court to consider. *Id.* The Delaware Supreme Court rejected Petitioner's claims, and affirmed the Superior Court's judgment. *Id.* at *2-4.

Petitioner filed a motion for modification of sentence while his direct appeal was pending. (D.I. 24-1 at Entry No. 41; D.I. 24-18) The Superior Court denied the motion, and Petitioner did not appeal that decision. (D.I. 24-1 at Entry No. 58; D.I. 24-20)

In July 2019, Petitioner filed a timely *pro se* motion for postconviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 24-22) The Superior Court denied Petitioner's Rule 61 motion in January 2020. *See State v. Woods*, 2020 WL 491187, at *1 (Del. Super. Ct. Jan. 29, 2020). Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment. *See Woods v. State*, 234 A.3d 162 (Table), 2020 WL 3286466, at *1 (Del. June 29, 2020).

## II.   GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism."

4

*Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## B.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).  This exhaustion requirement, based on principles of

5

comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims,

6

however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has

7

probably resulted in the conviction of one who is actually innocent,"[2] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court

---

[2]*Murray*, 477 U.S. at 496.

8

of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolved the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application

9

standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Petitioner's timely-filed Petition asserts the following eight Claims:[3] (1) the

indictment was defective (D.I. 1 at 5, 18-20); (2) the State engaged in prosecutorial

misconduct (D.I. 1 at 7, 24-27); (3) the State violated the Confrontation Clause by

not providing Petitioner with an opportunity to cross-examine the person who

found the laptop and Xbox systems (D.I. 1 at 8, 23-24); (4) the Superior Court

violated Petitioner's right to due process and self-representation when it denied his

*pro se* motion for acquittal (D.I. 1 at 16-17); (5) there was insufficient evidence to

sustain Petitioner's convictions for CCDW, felony theft, and the crimes related to

the February 14th burglary (second degree burglary, theft and criminal mischief

(D.I. 1 at 16-17, 21-23); (6) Petitioner's habitual offender sentence was excessive

and violated double jeopardy (D.I. 1 at 29); (7) trial counsel provided ineffective

assistance during the guilt phase of the trial (D.I. 1 at 5, 8, 10, 12, 16-17, 26-28);

and (8) trial counsel provided ineffective assistance at sentencing (D.I. 1 at 26-30).

### A.  Claim One:  Defective Indictment

Count Two of Petitioner's indictment asserted:

---

[3]Petitioner's form § 2254 Petition and Attachment actually assert a total of thirteen
Claims, five of which overlap or are repetitive.  (D.I. 1)  For ease of analysis, the
Court has combined overlapping and repetitively similar arguments, thereby
resulting in a total of eight Claims.

> [Petitioner], on or about the 14th day of February, 2017, in the County of New Castle, State of Delaware, did take, exercise control over, or obtain property of Laura Campbell or another person, consisting of jewelry, DVDs, HP laptop/accessories, and gaming systems or other miscellaneous property valued at $1,500 or more intending to deprive that person and/or the owner of same, or to appropriate same.

(D.I. 24-5 at 23)

In Claim One, Petitioner contends that the indictment was defective because the language "or other miscellaneous property" and "on or about" was too ambiguous. He argues that the ambiguous language had the effect of commingling the burglaries that occurred on February 14th and 16th, causing Petitioner "to face both incidents at trial." (D.I. 1 at 18-19) Petitioner also contends that Count Two incorrectly identified the laptop that was stolen as a Hewlett-Packard ("HP"), but the jury convicted him of stealing a Dell. (D.I. 1 at 20)

Petitioner presented substantially equivalent legal theories and facts to the Delaware Supreme Court on direct appeal. (D.I. 24-3 at 24-25, 55-61) Since Petitioner did not object to the indictment during trial, the Delaware Supreme Court only reviewed the instant two arguments for plain error as required by Delaware Supreme Court Rule 8. *See Woods*, 2019 WL 643862, at *3.

It is well-settled that Delaware Supreme Court Rule 8 constitutes an

11

independent and adequate state procedural rule for procedural default purposes. *See Campbell v. Burris,* 515 F.3d 172 (3d Cir.2008). By explicitly applying the procedural bar of Rule 8 to Petitioner's challenge to the indictment on direct appeal, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed,* 489 U.S. 255, 263–64 (1984), that its decision rested on state law grounds and that it was enforcing Petitioner's procedural default.

Petitioner appears to allege trial counsel's ineffective assistance as cause for his default of Claim One. Ineffective assistance provided by a trial or appellate attorney can constitute cause for a procedural default if the particular ineffective assistance allegation was presented to the state courts as an independent claim and it was determined that the attorney's error amounted to constitutionally ineffective assistance. *See Murray,* 477 U.S. at 488-89. An ineffective assistance of trial or appellate counsel claim cannot constitute cause if the claim itself is procedurally defaulted. *See Edwards,* 529 U.S. at 451-54.

Here, Petitioner's Rule 61 motion and subsequent appeal did not present an ineffective assistance argument ("IATC") regarding trial counsel's failure to preserve the instant defective indictment challenge. Therefore, Petitioner's instant

12

IATC allegation is itself defaulted and cannot constitute cause for Petitioner's default of Claim One.[4]

In the absence of cause, the Court need not address the issue of prejudice. Nevertheless, Petitioner has not demonstrated that he suffered prejudice from the instant procedural default. It is well-settled that due process requires an accused to be informed of the specific charge against him,[5] and that reasonable notice "sufficiently apprises the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962); *see also In re Oliver*, 333 U.S. 257, 273 (1948) (a "person's right to reasonable notice of a charge against him ... [is] basic in our system of jurisprudence."). To determine whether an indictment satisfies due process, a court must ask whether the indictment: (1) contains the elements of the offense charged; (2) provides the defendant adequate notice of the charges against which he must defend; and (3) protects against double jeopardy by enabling the defendant to plead an acquittal or conviction to bar future

---

[4]The Court acknowledges that Petitioner presented several ineffective assistance of trial counsel allegations to the Delaware Supreme Court during his direct appeal. That presentation, however, did not exhaust state remedies for the IATC arguments. The Delaware Supreme Court refused to consider Petitioner's IATC claims on direct appeal because, as a general rule, in Delaware, ineffective assistance of counsel claims must be first presented to the Superior Court in a Rule 61 motion. *See Ducote v. Phelps*, 2010 WL 3860995, at *7 (D. Del. Sept. 28, 2010).

[5]*See Cole v. Arkansas*, 333 U.S. 196, 201 (1948).

prosecutions for the same offense. *Russell*, 369 U.S. at 763-64 (1962); *see also*

*Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975) ("Insofar as due process

claims ... the indictment [must] fairly apprise the defendant of the charges to which

he was subjected and of the basic facts upon which they were founded and

provide[ ] adequate protection for double jeopardy purposes").

Here, although Count Two of the indictment included the phrase "other

miscellaneous property," when viewed in totality, Count Two provided Petitioner

with sufficient notice of the felony theft charge because it: (1) included all

elements of the offense set forth in 11 D. C. § 841 (*See* D.I. 24-5 at 23); (2)

specified the date of the offense as "on or about February 14, 2017," the location as

New Castle County Delaware, and the owner of the property as Laura Campbell

(D.I. 24-5 at 23); and (3) specifically identified some of the stolen property.  The

fact that the laptop was mistakenly identified as being a HP rather than a Dell does

not alter that conclusion because the brand of the laptop was not an element of the

offense and, in all other respects, the indictment fully and correctly informed

Petitioner of the theft for which he was being charged.  This record demonstrates

that Petitioner was not so surprised by the proof presented at trial that he was

unable to adequately prepare for his defense. *See United States v. Somers*, 496

F.2d 723, 746 (3d Cir. 1974) (finding that a variance does not rise to the level of a

14

constitutional violation unless the defendant was "so surprised by the proof adduced that he was unable to prepare his defense adequately").

Petitioner's contention that the "on or about" language created ambiguity about whether he was being charged with the February 14th burglary or the February 16th burglary fares no better. The record accurately shows that Petitioner was convicted of the February 14th burglary of Campbell's residence and not some other offense on some other date. For instance, the indictment specifically identifies the date of the offense as "February 14, 2017." (D.I. 24-5 at 23) During trial, the State argued that Petitioner had to commit the burglary during a "relatively small window of opportunity" between 7:10 a.m. and 8:49 a.m. on February 14, 2017. (D.I. 24-6 at 199-200) And, the Delaware Supreme Court explicitly found that that Petitioner "was convicted for the February 14, 2017 burglary of the Campbell's residence, not the second burglary on February 16, 2017." *Woods*, 2019 WL 643862, at *3. Given all these circumstances, Petitioner cannot demonstrate that he was prejudiced by trial counsel's failure to challenge the indictment for being ambiguous.

Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable

evidence of his actual innocence.  Accordingly, the Court will deny the defective

indictment argument in Claim One as procedurally barred.

### B. Claim Two:  Prosecutorial Misconduct

In Claim Two, Petitioner contends that the State committed prosecutorial

misconduct by: (a) misrepresenting the evidence during its opening statement by

suggesting that the laptop and Xbox were among the discarded items the police

recovered when they retraced the path of the car chase (D.I. 1 at 24-26); and (b)

not correcting Campbell's "false testimony" that she knew certain items –

including Nintendo Wii numchuck controllers and cables – were taken during the

February 14th burglary, rather than the February 16th burglary (D.I. 1 at 25).

Both sub-arguments of Claim Two are procedurally defaulted.  Although

Petitioner presented sub-argument (a) on direct appeal, the Delaware Supreme

Court only reviewed the sub-argument for plain error under Delaware Supreme

Court Rule 8 due to Petitioner's failure to object to the State's opening statement at

trial.  *See Woods*, 2019 WL 643862, at *3.  The Delaware Supreme Court's

explicit application of the independent and adequate state procedural Rule 8

constituted a plain statement of its intent to enforce Petitioner's default of Claim

Two (a).  In turn, Claim Two (b) is procedurally defaulted because Petitioner did

not present it to the Delaware Supreme Court on direct or postconviction appeal,[6]

and any attempt by Petitioner to return to state court to exhaust state remedies

would be futile.[7]

      Given these circumstances, the Court cannot review the merits of Claim

Two (a) and (b) absent a showing of either cause and prejudice or that a

miscarriage of justice will result absent such review.  To the extent Petitioner

attempts to establish cause for his default by blaming trial counsel for not raising

the issues in Claim Two during trial or on direct appeal, his attempt is unavailing.

Petitioner did not present in his Rule 61 proceeding any argument that trial counsel

was ineffective for failing to preserve the instant prosecutorial misconduct issue.

---

[6](*See* D.I. 24-3 at 20-75; D.I. 24-9)

[7]At this juncture, any attempt by Petitioner to raise Claim Two (b) in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Rule 61(i)(1) and as second or successive under Rule 61(i)(2). *See* Del. Super. Ct. Crim. R. 61(i)(1) (establishing a one-year deadline for filing Rule 61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (providing that second or successive motions shall be summarily dismissed unless they meet the pleading requirements of Rule 61(d)(2)(i) or (ii)).  Although Rule 61provides for an exception to its procedural bars if a Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claim.  Similarly, the exceptions to the bars contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to Claim Two (b).  Therefore, the prosecutorial misconduct argument in Claim Two (b) is procedurally defaulted.

Therefore, Petitioner's instant IATC allegation is itself defaulted and cannot constitute cause for Petitioner's default of Claim Two (a) and (b).

In the absence of cause, the Court will not address the issue of prejudice. Petitioner also has not demonstrated that the miscarriage of justice exception should be applied to excuse his default. Accordingly, the Court will deny Claim Two as procedurally barred.

### C. Claim Three: Confrontation Clause Violation

A few days after the February 14th burglary, a construction worker found Campbell's laptop and Xbox systems at St. Anne's Golf Course. (D.I. 24-6 at 191) The worker turned the property over to Corporal Walker on February 23, 2017. (*Id.*) The State and trial counsel stipulated that Corporal Walker could testify to these facts himself, for the sake of expediency, to avoid having to call more witnesses. (D.I. 24-6 at 189)

In Claim Three, Petitioner argues that the stipulation violated his rights under the Confrontation Clause because he was unable to confront and cross-examine the construction worker. Petitioner presented this argument to the Delaware Supreme Court on direct appeal but, once again, that court only reviewed the argument for plain error under Rule 8. Therefore, Claim Three is procedurally defaulted.

18

To the extent Petitioner asserts trial counsel's failure to preserve the Confrontation Clause issue at trial as cause for his default, it is unsuccessful. Petitioner did not include this IATC allegation in his Rule 61 proceeding. Consequently, the instant IATC claim is procedurally defaulted and cannot constitute cause for Petitioner's default of Claim Three.

As before, the Court will not address the issue of prejudice and finds that Petitioner has failed to demonstrate a fundamental miscarriage of justice to excuse his default. Therefore, the Court will deny Claim Three as procedurally barred.

### D. Claim Four: Violation of Right to Self- Representation and Due Process

After the jury read its verdict, Petitioner personally attempted to move for a judgment of acquittal. *See Woods*, 2019 WL 64862, at *1-2. The Superior Court declined to hear the oral *pro se* motion because Petitioner was represented by counsel at the time. The Superior Court informed Petitioner that, if he wished to represent himself and move for an acquittal, he needed to present a written motion requesting as such, and the court would hold a hearing. *Id.* Petitioner never filed a motion to proceed *pro se* or seeking an acquittal. *Id.* at *2

In Claim Four, Petitioner contends that the Superior Court violated his due process right to a fair trial by refusing to hear the oral motion for acquittal.

19

Petitioner presented the same argument to the Delaware Supreme Court on direct

appeal.  The Delaware Supreme Court denied the argument, opining:

> [T]he Superior Court did not err or abuse its discretion
> when denying [Petitioner's] *pro se* request for a
> judgment of acquittal. Before allowing a criminal
> defendant to proceed *pro se*, the Superior Court must
> conduct a hearing to inform the defendant of the risks
> inherent in going forward in a criminal trial without the
> assistance of legal counsel and to determine that the
> defendant's decision to proceed without counsel is a
> knowing and voluntary waiver of the constitutional
> right to counsel. The Superior Court's refusal to consider
> [Petitioner's] request for a judgment of acquittal
> without first conducting the required hearing on
> [Petitioner's] request to proceed *pro se*, and the court's
> ruling that [Petitioner] must file a written motion for
> acquittal, were entirely appropriate.

*Woods*, 2019 WL 643862, at *3.  Given the Delaware Supreme Court's

adjudication of the instant argument on the merits, Claim Four will only warrant

habeas relief if the Delaware Supreme Court's decision was contrary to, or an

unreasonable application of, clearly established federal law.

To the extent Petitioner complains about the Superior Court's failure to

entertain his oral motion as a violation of state procedural rules, the argument

asserts an error of state law that is not cognizable on federal habeas review.  *See*

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  To the extent Petitioner presents

the Superior Court's procedural decision as a violation of federal law, he does not

identify, and the Court cannot discern, any Supreme Court precedent controlling the form and time by which state trial courts must entertain such motions. Consequently, the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of clearly established federal law. *See generally Wright v. Van Patten,* 552 U.S. 120, 126 (2008) ("[B]ecause our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established Federal law"); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonably applied clearly established Federal law' [under] § 2254(d)(1).").

As for Petitioner's substantive argument, the Court liberally construes Petitioner's contention to be that the Superior Court violated his right to self-representation by refusing to entertain his oral motion for an acquittal. The clearly established law governing self-representation claims is *Faretta v. California*, 422 U.S. 806 (1975). In *Faretta*, the Supreme Court held that a criminal defendant has a Sixth Amendment right to represent himself and, therefore, may affirmatively waive his right to counsel." *Id*. at 834-35. Although a defendant's right to represent himself is fundamental in nature, representation by counsel is the

21

standard, not the exception, and there is a strong presumption against the waiver of the right to counsel. *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 161 (2000); *Patterson v. Illinois*, 487 U.S. 285, 307 (1988). Consequently, a defendant's right to self-representation is not triggered until it is clearly, unequivocally, and timely asserted. *Faretta,* 422 U.S. at 835. Once a defendant unequivocally and timely asserts his constitutional right to self-representation, the trial court must conduct a colloquy ("*Faretta* inquiry") with the defendant to determine that his waiver of his right to counsel is knowing and voluntary, and inform him of the nature of the charges against him, the possible penalties, and the dangers of self-representation. *See Buhl v. Cooksey*, 233 F.3d 783, 791-92 (3d Cir. 2000).

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court did not specifically apply the *Faretta* standard in affirming the Superior Court's decision. Nevertheless, the Court concludes that the Delaware Supreme Court's decision was not contrary to *Faretta*, because the Delaware case cited by the Delaware Supreme Court[8] refers to the applicable precedent. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of

---

[8]The Delaware Supreme Court cited *Hartmann v. State*, 918 A.2d 1138, 1440-41 (Del. 2007), which cited *Stigars v. State*, 674 A.2d 477, 479 (Del.1996), which, in turn, relied on *Faretta*. *See Woods*, 2019 WL 643862, at *3.

Pennsylvania's decision was not "contrary to" clearly established Federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court must also determine if the Delaware Supreme Court unreasonably applied *Faretta* to the facts of Petitioner's case when denying Claim Four. At the end of his trial and after the jury found Petitioner guilty, Petitioner asked to personally address the trial court. (D.I. 24-6 at 212) The trial judge suggested that Petitioner should confer with trial counsel first. (*Id.*) Petitioner responded, "Well, first, he's fired, so I don't need to speak with him." (D.I. 24-6 at 212) The trial judge stated that "it doesn't work quite like that." (*Id.*) Petitioner responded, "Well, I would like to make a motion to the address the Court and if not, I would like to move for an acquittal on the charges." (*Id.*) The trial judge responded as follows:

> [Petitioner], you have chosen up to this point to allow Mr. Buckworth to represent you. If you decide at this point to go *pro se*, the Court needs to have a hearing and address a motion to proceed *pro se*. It's not one that I would suggest that you make, but you're free to do so. But I'm not going to consider an oral motion at this time.

23

> It's a motion that you need to make in writing and the
> Court will address it at a later time.

*Woods*, 2019 WL 643862, at *1.

After reviewing this record within the framework provided by *Faretta* and its progeny, the Court concludes that the Delaware Supreme Court did not unreasonably determine the facts or unreasonably apply *Faretta* when denying Claim Four. The trial judge did not ignore Petitioner's request to proceed *pro se* or his request to assert a motion for acquittal; rather, the judge directed Petitioner to put his requests in writing so that they could be properly considered. (D.I. 24-6 at 212) Although Petitioner was informed that he could file a written request to proceed *pro se* and a written motion for a judgment of acquittal, Petitioner did neither. Consequently, there was nothing for the trial court to decide. Petitioner then proceeded to sentencing with the assistance of trial counsel and, even though Petitioner spoke at length to the sentencing judge at certain points, he never reasserted his request to proceed *pro se*. (*See* D.I. 24-26 at 16-18)

Accordingly, the Court will deny Claim Four for failing to satisfy § 2254(d).

### E. Claim Five: Insufficient Evidence

In Claim Five, Petitioner contends that there was insufficient evidence to support his convictions for CCDW, felony theft, or any of the crimes related to the February 14th burglary. More specifically, he asserts: (1) he should not have been

convicted of CCDW because the weapon – a knife – was clipped to the outside of his pocket, not concealed within it (D.I. 1 at 21-22); (2) he should not have been convicted of felony theft because the evidence did not establish that the value of the property taken was $1500 or more (D.I. 1 at 22-23); and (3) he should not have been convicted of any of the crimes related to the February 14th burglary – second degree burglary, theft, and criminal mischief – because he was seen miles away at the time of the offense, making it physically impossible for him to have committed the break-in (D.I. 1 at 16-17). Although Petitioner presented these arguments to the Delaware Supreme Court on direct appeal, the Delaware Supreme Court applied Rule 8 and only reviewed the arguments for plain error under Rule 8. Therefore, Claim Five is procedurally defaulted.

Petitioner asserts trial counsel's failure to preserve the instant insufficient evidence argument at trial as cause for his default. The attempt, however, is unavailing because the instant IATC claim is itself procedurally defaulted.

Given Petitioner's failure to demonstrate cause, the Court will not address the issue of prejudice. The Court further finds that Petitioner has failed to demonstrate a fundamental miscarriage of justice will occur if the merits of Claim Five are not reviewed. Accordingly, the Court will deny Claim Five as procedurally barred.

### F. Claim Six: Double Jeopardy and Excessive Sentence

The following background information provides context for Claim Six. After Petitioner was convicted, the State moved under 11 Del. C. § 4214(a) and (d) to declare Petitioner a habitual offender and sentence him as such on the second degree burglary conviction. (D.I. 24-15; D.I. 24-3 at 12) The State's motion correctly identified the charge by name – "Burglary Second Degree" – but mistyped the Criminal Action Number as "IN17-02-1278." (D.I. 24-15 at 2) The correct Criminal Action Number for the second degree burglary charge was "IN17-02-1277", whereas Criminal Action Number IN17-02-1278 was assigned to the theft charge on which Petitioner was acquitted. (*See* 24-1 at Entry No. 28; D.I. 24-1 at 1) The Superior Court sentenced Petitioner as a habitual offender for the second degree burglary conviction to fourteen years at Level V incarceration.

In Claim Six, Petitioner asserts two challenges concerning the Superior Court's determination that he qualified to be sentenced as a habitual offender. First, he contends that he was declared a habitual offender for an offense he was found not guilty of – theft – and, therefore, his habitual offender declaration violates double jeopardy ("double jeopardy argument"). Second, he contends that, since the motion to declare him a habitual offender did not contain the correct criminal action number for his second degree burglary conviction, the Superior

26

Court lacked the authority to sentence him to fourteen years as a habitual offender for the burglary conviction. Instead, he asserts that the Superior Court could only have sentenced him to a sentence falling between zero to eight years ("excessive sentence argument").

Petitioner presented his instant double jeopardy argument to the Superior Court in his Rule 61 motion and then to the Delaware Supreme Court on direct appeal, arguing that, although he was acquitted of Criminal Action No. 17-02-1278, the State used the offense to declare him a habitual offender. (*See* D.I. 24-9 at 15) Citing Delaware Superior Court Criminal Rule 61(i)(3), the Superior Court held that the instant double jeopardy argument was "technically barred as [an] issue[] that could have been, but [was] not, raised during sentencing or on direct appeal." *Woods*, 2020 WL 491187, at *2. The Superior Court only considered the double jeopardy allegation to the extent it was relevant to Petitioner's related IATC claim. *Id.* at *2; *see infra* at Section III.H. The Delaware Supreme Court affirmed the Superior Court's denial "on the basis of and for the reasons assigned by the Superior Court in its January 29, 2020 Order." *Woods*, 2020 WL 3286466, at *1.

By applying the procedural bar of Rule 61(i)(3), the Superior Court (and, therefore, also the Delaware Supreme Court) articulated a "plain statement" under *Harris* that its decision rested on state law grounds. This Court has consistently

27

held that Rule 61(i)(3) is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the double jeopardy argument in Claim Six is procedurally defaulted.

As for Petitioner's excessive sentence argument, the record reveals that Petitioner did not exhaust state remedies for the argument because he did not present it to the Delaware Supreme Court on direct or postconviction appeal. (*See* D.I. 24-3 at 20-75; D.I. 24-9) Any attempt on Petitioner's part to return to the Delaware state courts to present the argument in a new Rule 61 motion would be barred as untimely and successive under Rule 61(i)(1) and (2). None of the exceptions to the Rule 61's bars apply in this case. Therefore, Petitioner's excessive sentence argument in Claim Six is also procedurally defaulted.

Given these circumstances, the Court cannot review the merits of either argument in Claim Six absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed. To the extent Petitioner attempts to establish cause by blaming trial counsel for not objecting to the habitual offender motion or the habitual offender sentence, the attempt is unavailing. Although Petitioner did present an ineffective assistance of counsel argument based on the State's actions

28

with respect to his habitual offender status to the Delaware state courts in his Rule 61 proceeding, as explained later in the Court's discussion of Claim Eight, the Delaware state courts reasonably applied clearly established federal law in holding that trial counsel's actions did not amount to constitutionally ineffective assistance. *See infra* at Section III.H.  Therefore, trial counsel's performance cannot constitute cause to excuse Petitioner's default of Claim Six.

In the absence of cause, the Court does not need to address the issue of prejudice.  Nevertheless, Petitioner has not demonstrated that he suffered prejudice from the default of his sentencing claims.  As the Court explains in its discussion of Claim Eight, the Superior Court's sentencing decision was not guided by the typographical error in the case number on the State's motion to declare Petitioner a habitual offender.  The Superior Court had to authority to and, therefore, properly declared and sentenced Petitioner as a habitual offender for his second degree burglary conviction.  Contrary to Petitioner's assertion, he did not receive any punishment for the theft charge on which he was acquitted.  Consequently, Petitioner's habitual offender sentence for his second degree burglary conviction did not implicate the double jeopardy clause, nor was it excessive.

Finally, the miscarriage of justice exception cannot excuse Petitioner's default.  Petitioner's instant sentencing arguments focus on his punishment rather

29

than his conviction and offer no new evidence of his actual innocence.
Accordingly, the Court will deny Claim Six as procedurally barred.

### G. Claim Seven: Ineffective Assistance During Trial

In Claim Seven, Petitioner contends that trial counsel provided ineffective assistance during the guilt phase of his trial by: (1) not objecting to Campbell's false testimony; (2) not investigating the case; (3) not gathering and presenting evidence that supported his alibi; (4) not subjecting the case to adversarial testing; (5) not examining the crime scene; (6) not filing a motion for judgment of acquittal; (7) not filing an appeal; (8) having a conflict of interest because he became a prosecutor shortly after sentencing; and (9) stipulating without Petitioner's consent to the admission of hearsay statements from the construction worker who found some of the stolen property at the golf course.

Petitioner did not present any of these arguments to the Delaware Supreme Court on postconviction appeal. At this juncture, any attempt by Petitioner to obtain review of Claim Seven in a new Rule 61 motion would be time-barred under Delaware Superior Court Criminal Rule 61(1)(i) and barred as second or successive under Rile 61(i)(2). None of Rule 61's exceptions to these procedural bars are applicable in this case. Therefore, Claim Seven is procedurally defaulted,

meaning that the Court cannot review the merits of the Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner, who represented himself in his Rule 61 proceedings, does not assert any cause for his default of the nine sub-arguments in Claim Seven. In the absence of cause, the Court will not address the issue of prejudice. And, finally, the miscarriage of justice exception is not applicable because Petitioner has not provided any new reliable evidence of his actual innocence. Therefore, the Court will deny Claim Seven as procedurally barred.

## H. Claim Eight: Ineffective Assistance During Sentencing

In his final Claim, Petitioner asserts that trial counsel provided ineffective assistance by "allowing [Petitioner] to be declared [a habitual offender] upon a conviction he was innocent of, upon convictions that did not meet the requirements of [11 Del. C. §] 4214(a) to be declared, and failed to object to the misapplication of [the] habitual statute." (D.I. 1 at 29) Petitioner also contends that trial counsel permitted the Superior Court to wrongly sentence him outside the ordinary statutory range of penalties (zero to eight years) for his second degree burglary conviction. (D.I. 1 at 30)

Petitioner presented Claim Eight to the Superior Court in his Rule 61 motion. The Superior Court denied the Claim as meritless, and the Delaware

31

Supreme Court affirmed that decision "on the basis of and for the reasons assigned

by the Superior Court in its January 29, 2020 Order." *Woods*, 2020 WL 3286466,

at *1. Given these circumstances, Claim Eight will only warrant habeas relief if

the Superior Court's decision was contrary to, or an unreasonable application

of, clearly established federal law.[9]

The clearly established Supreme Court precedent governing ineffective

assistance of counsel claims is the two-pronged standard enunciated by *Strickland*

*v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539

U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate

that "counsel's representation fell below an objective standard of reasonableness,"

with reasonableness being judged under professional norms prevailing at the time

counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second

*Strickland* prong, a petitioner must demonstrate that "there is a reasonable

probability that, but for counsel's error the result would have been different." *Id.*

at 687-96. A reasonable probability is a "probability sufficient to undermine

---

[9]Given the Delaware Supreme Court's reliance on the Superior Court's judgment, the Court will reference the Superior Court's decision in its discussion of Claim Eight. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (reiterating that when a higher court affirms a lower court's judgment without an opinion or other explanation, federal habeas law employs a "look through" presumption and assumes that the later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment).

confidence in the outcome." *Id.* at 688.  A court many deny an ineffective

assistance of counsel claim by only deciding one of the *Strickland* prongs.  *See*

*Strickland*, 466 U.S. at 697.

In order to sustain an ineffective assistance of counsel claim, a petitioner

must make concrete allegations of actual prejudice and substantiate them or risk

summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991);

*Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).  Although not

insurmountable, the *Strickland* standard is highly demanding and leads to a "strong

presumption that the representation was professionally reasonable." *Strickland*,

466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that

the Superior Court correctly articulated the *Strickland* standard as governing

Petitioner's instant ineffective assistance of trial counsel Claim.  As a result, the

Superior Court's decision was not contrary to clearly established Supreme Court

precedent. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision

applying the correct legal rule from [Supreme Court] cases to the facts of a

prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to'

clause").

The Court must also determine if the Superior Court reasonably applied the

33

*Strickland* standard to the facts of Petitioner's case. When performing this inquiry,
the Court must review the Superior Court's denial of Petitioner's ineffective
assistance of counsel allegations through a "doubly deferential" lens. *See
Harrington*, 562 U.S. at 105-06. "[T]he question is not whether counsel's actions
were reasonable, [but rather], whether there is any reasonable argument that
counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice
under *Strickland*, the question is "whether it is reasonably likely the result would
have been different" but for counsel's performance, and the "likelihood of a
different result must be substantial, not just conceivable." *Id.* And finally, when
viewing a state court's determination that a *Strickland* claim lacks merit through
the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded
jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

Petitioner alleges trial counsel should have identified three problems with
the State's motion to declare him a habitual offender and the Superior Court's
imposition of a habitual sentence: (1) the State improperly sought to declare
Petitioner a habitual offender under § 4214(a) because that section requires three
predicate felonies, demonstrating that the State incorrectly treated the two second
degree burglary convictions from 2005 – which were the result of a guilty plea – as
two separate predicate convictions rather than as one predicate conviction; (2) the

34

criminal action number referenced in the motion was for the 2018 theft charge he

was acquitted of, not his 2018 second degree burglary conviction, demonstrating

that the Superior Court violated the double jeopardy clause by sentencing

Petitioner for a non-existent conviction; and (3) since the habitual offender motion

did not reference the criminal action number for Petitioner's 2018 second degree

burglary conviction, the Superior Court lacked the authority to impose a habitual

offender sentence for the 2018 second degree burglary conviction, thereby

demonstrating that it imposed an excessive/illegal fourteen year habitual sentence

instead of a sentence within the non-habitual range of zero to eight years.

The Superior Court provided the following explanation for denying

Petitioner's instant ineffective assistance of counsel arguments:

> As to [Petitioner's] first argument, Trial and Appellate Counsel's representation did not fall below an objective standard of reasonableness because the State's habitual offender petition satisfied the requirements of Section 4214(a) and (d) and counsel therefore had no basis to oppose it. The State sought to declare [Petitioner] habitual under 11 *Del. C.* § 4214(a) on the basis that he previously had been convicted of two Title 11 violent felonies and he was before the Court for sentencing on a third Title 11 violent felony. The two prior violent felonies the State cited were (1) the Burglary Second conviction in 1990; and (2) the two Burglary Second convictions in 2005. [Petitioner] is correct that his two Burglary Second convictions in 2005 count as a singular conviction for purposes of the habitual offender statute. Put differently, if [Petitioner] had not also been convicted

of Burglary Second in 1990, the 2005 convictions would not have formed a sufficient basis on which to declare him a habitual offender. But the State did not rely on the two 2005 convictions as distinct convictions. Rather, the State relied on the 1990 conviction as [Petitioner'] first violent felony conviction and the 2005 convictions as [Petitioner's] second violent felony conviction. Accordingly, [Petitioner's] first ineffective assistance claim fails because his counsel had no basis to oppose the petition as statutorily inadequate.

As to [Petitioner's] second argument, he is correct that a typographical error in the State's motion referred to the wrong criminal action number as the conviction for which the State sought habitual offender designation. The petition made clear, however, that the State sought a habitual offender declaration for [Petitioner's] Burglary Second conviction. Although there were several charges before the Court at the time of sentencing, there only was one Burglary Second conviction. The Court's sentencing order makes clear that [Petitioner] was declared a habitual offender and sentenced accordingly for Criminal Action No. 17021277, the Burglary Second charge for which he was convicted.

Trial and Appellate Counsel's failure to spot and attempt to exploit the State's typographical error did not fall below the objective standard of reasonableness, and if counsel had raised the issue at sentencing there is not a reasonable likelihood the Court would have denied the petition or imposed a different sentence. Rather, the Court would have permitted the State orally to clarify the criminal action number for which it sought to declare [Petitioner] a habitual offender. The typographical error did not confuse [Petitioner's] counsel or the Court, as it was clear to all involved that the State was seeking habitual offender designation and sentencing on the only Burglary Second charge that was before the Court.

> Accordingly, [Petitioner] counsel was not ineffective at
> sentencing or on appeal.

*Woods*, 2020 WL 491187, at *3.

The following summary of the record for each of Petitioner's three alleged errors provides useful information for Court's inquiry under § 2254(d)(1)'s second prong.

## 1. Predicate convictions under § 4214(d)

The State filed a motion asking the Superior Court to declare Petitioner a habitual offender under 11 Del. C. § 4214(a), and to impose the sentencing provisions of § 4214(d).  (D.I. 24-15 at 2)  Under § 4214(a), a person is declared a habitual offender if he/she has two times been convicted of a violent felony and is then convicted of a third violent felony, or if he/she has three times been convicted of any felony and is then convicted of a fourth felony.  *See* 11 Del. C. § 4214(a). Section 4214(a) further provides that the "court, upon the State's petition, shall impose the applicable minimum sentence pursuant to subsection (b), (c), or (d) of this section and may, in its discretion, impose a sentence of up to life imprisonment." *Id.*  Under § 4214(d), a person who has two times been convicted of a violent felony and is then convicted of a third violent felony "shall receive a minimum sentence of the statutory maximum statutory penalty provided [...] for

37

the third subsequent Title II violent felony which forms the basis of the State's [habitual offender motion] up to life imprisonment." 11 Del. C. § 4214(d).

In this case, Petitioner was convicted of one charge of second degree burglary in 1990 and two charges of second degree burglary again in 2005. (*See* 24-15 at 2-3) The State treated the two second degree burglary convictions in 2005 as one predicate felony conviction for purposes of § 4214(a) and (d). In fact, the State's "Motion to Declare [Petitioner] a Habitual Offender" actually identified the 1990 second degree burglary conviction as numeral one and the two 2005 second degree burglary convictions – together – as numeral two. (*See* D.I. 24-15 at 2-3) Second degree burglary is a Title 11 violent felony. *See* 11 Del. C. § 4201(c). Consequently, when Petitioner was convicted of a third second degree burglary charge in 2018, he met the requirements of § 4214(d). The Superior Court granted the State's habitual offender motion and issued an order that declared Petitioner a habitual offender under § 4214(d) and imposed a sentence pursuant to § 4214(d) for his 2018 second degree burglary conviction. (D.I. 24-15 at 5-6; D.I. 24-26 at 14) This record demonstrates that the Superior Court correctly determined Petitioner was a habitual offender under § 4214(d).

38

## 2. Incorrect criminal action number and double jeopardy

The theft charge for which Petitioner was acquitted was identified by Criminal Action Number 17021278. The second degree burglary charge for which Petitioner was convicted was identified by Criminal Action Number 17021277. The State sought to have Petitioner declared a habitual offender for his second degree burglary conviction but, instead of referencing Criminal Action Number 17021277, the State's habitual offender motion referenced Criminal Action Number 17021278.

Nevertheless, the habitual offender motion clearly identified "Burglary Second Degree" as the conviction forming the basis of the habitual offender characterization, (D.I. 24-15 at 3), and Petitioner was convicted of only one count of second degree burglary, which, in turn, was the only Title 11 violent felony that could have formed the basis of the motion under § 4214(d). The sentencing transcript also demonstrates that both the State and the sentencing judge understood the second degree burglary conviction (Crim. A. No. 17021277) formed the basis for the habitual offender request. For instance, during sentencing the State asserted: "the recommendation that the State is going to make, and that is for the habitual offender sentence on the Burglary Second, the State is asking for 15 years at Level V." (D.I. 24-26 at 15) When the sentencing judge imposed the

39

habitual offender sentence, the judge stated: "In Criminal Action Number
17021277, [...] you are declared a habitual offender [... and] placed in the custody
of the Department of Correction for 14 years at Level V." (D.I. 24-26 at 18)
Contrary to Petitioner's contention, this record demonstrates that the habitual
offender sentence was imposed for his 2018 second degree burglary conviction
(Crim. A. No. 17021277) and not for the acquitted theft charge (Crim. A. No.
17021278).

### 3. Incorrect criminal action number and excessive/illegal sentence

In turn, under § 4214(d), defendants are subject to "a minimum sentence of
the statutory maximum statutory penalty provided elsewhere in this title for the
third or subsequent Title 11 violent felony which forms the basis of the State's
petition . . . , up to life imprisonment." 11 Del. C. § 4214(d). Second degree
burglary is a class D felony, which ordinarily carries a penalty range of zero to
eight years in prison. *See* 11 Del. C. §§ 825, 4205(b)(4). Once the Superior Court
granted the State's habitual offender motion, Petitioner faced eight years to life in
prison for the second degree burglary conviction under § 4214(d). Petitioner's
fourteen year sentence fell within that range.

40

### 4. Trial counsel's failure to challenge Petitioner's habitual offender status and sentence

Based on the foregoing, the Court concludes that the Superior Court reasonably determined the facts and reasonably applied *Strickland* when concluding that trial counsel's failure to object to Petitioner's habitual offender status and sentence did not amount to ineffective assistance. It is clear that the State and the Superior Court considered Petitioner's two 2005 convictions for second degree burglary as a single predicate violent felony conviction. Adding that single violent felony conviction to Petitioner's 1990 second degree burglary conviction qualified Petitioner for habitual offender status and sentencing under § 4214(d) because he had the required two predicate violent felony convictions. Thus, trial counsel had no legal basis for challenging the State's habitual offender motion or for contesting the Superior Court's habitual offender designation at sentencing.

Next, as for the typographical error in the motion, nothing in the record indicates that the Superior Court and trial counsel were confused by the incorrect criminal action number, and the record clearly demonstrates that the habitual offender sentence was properly applied for Petitioner's second degree burglary conviction. Consequently, trial counsel did not perform deficiently by not

41

objecting to Petitioner's habitual offender status on this ground, nor did trial counsel's failure to raise the typographical error prejudice Petitioner.

And finally, since Petitioner was correctly designated a habitual offender for his second degree burglary conviction, trial counsel had no basis to challenge the fourteen year sentence imposed by the Superior Court as excessive. Accordingly, the Court will deny Claim Eight for failing to satisfy § 2254(d).

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In addition, when a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and

42

(2) whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484.

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, the Court concludes that the instant Petition must be denied without an evidentiary or the issuance of a certificate of appealability. An appropriate Order will be entered.

43